Margaret ARKANAKYAK, Appellant,

v.

STATE of Alaska, COMMERCIAL
FISHERIES ENTRY
COMMISSION, Appellee.

No. S–1061.

Supreme Court of Alaska.

July 22, 1988.

Sidney D. Watson, Alaska Legal Services, Dillingham, Kathy Keck, Alaska Legal Services, Bethel, Donald S. Cooper, Alaska Legal Services, Anchorage, for appellant.

Michael W. Sewright, Asst. Atty. Gen., Anchorage, Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

RABINOWITZ, Chief Justice.

Margaret Arkanakyak appeals from a superior court judgment sustaining the Alaska Commercial Fisheries Entry Commission's (CFEC) refusal to award her two points toward a Bristol Bay salmon set gill net limited entry permit based on her alleged participation in that fishery as a crew member in 1971 and 1972. We conclude that the case should be remanded to the CFEC to consider whether a CFEC policy against awarding non-licensed crew members points for past crew participation should apply to Arkanakyak.

## I. INTRODUCTION.

Margaret Arkanakyak, an Alaska Native, was born in 1928 and has lived her entire life in the Bristol Bay area. She has had little contact with western culture, and has an extremely limited, essentially non-functional capacity to speak or understand English. She cannot write in any language.

Arkanakyak began fishing commercially in the early 1950's while living in Manokotak. In 1957, Arkanakyak and her husband Willie Arkanakyak moved to Togiak, a village approximately 50 miles west of Manokotak. From 1957 to approximately 1965 she fished with her husband in Togiak. She apparently was unable to fish for a period after undergoing back surgery in January 1966. After her husband died in 1969 or 1970,[1] Arkanakyak returned to Manokotak. During the summers of 1971 and 1972 she allegedly fished with her friend Mary Alakayak at Alakayak's set net site at Iguishik Beach.

Alaska Statute 16.05.480 requires all persons engaged in commercial fishing in Alaska to obtain a license. Prior to 1974, however, the wife of a commercial fisherman who did not receive income separate from that of her husband as a result of working with her husband in the fishery was not required to have a commercial license.[2] Nevertheless, both Arkanakyak and her husband obtained commercial fishing licenses in 1969 and 1970 when someone completed the required forms on their behalf. She also held a set net gear license in 1973. During the time Arkanakyak claims she crewed with Mary Alakayak in 1971 and 1972, however, Arkanakyak was not licensed to fish commercially.[3]

In 1977, Arkanakyak applied for a Bristol Bay salmon set gill net entry permit. The CFEC classified her application at four verified points under its priority classification system [4] and issued her a non-transferable entry permit which cannot be sold, inherited, or even given away. Arkanakyak objected, claiming among other things that her 1971 and 1972 participation in the Bristol Bay fishery as a crew member with Mary Alakayak entitled her to two additional points and therefore a freely transferable entry permit. She requested and received an adjudicatory hearing on her claims. At the hearing, Arkanakyak claimed that she was licensed to fish commercially during 1971 and 1972 and in fact crewed during those years. The hearing officer, however, found that Arkanakyak had failed to obtain a commercial fishing license for 1971 and 1972. Based on that finding, the hearing officer recommended that the CFEC deny her claim for crew

---

1. Arkanakyak's brief and her testimony before the Commission indicate that her husband died in 1969. However, the record indicates that her husband applied for a drift net license on April 3, 1970.

2. Former AS 16.05.940(2). This provision, amended in 1974 to apply to either spouse, was amended in 1977. *See* Ch. 127, § 82, SLA 1974; Ch. 105, § 12, SLA 1977.

3. Since she was no longer fishing with her husband during 1971 and 1972, AS 16.05.480 required that Arkanakyak obtain a license to engage in commercial fishing, even if she was merely acting as a crew member. *See* AS 16.-05.940(4) (defining "commercial fisherman" to include persons directly or indirectly participating in taking raw fishery products).

4. The version of the Limited Entry Act in effect at the time provided in part:

   Following the establishment of the maximum number of units of gear for a particular fishery under Sec. 240 of this chapter, the commission shall adopt regulations establishing qualifications for ranking applicants for entry permits according to the degree of hardship which they would suffer by exclusion from the fishery. The regulations shall define priority classifications of similarly situated applicants based upon a reasonable balance of the following hardship standards:
   (1) degree of economic dependence upon the fishery, including but not limited to percentage of income derived from the fishery, reliance on alternative occupations, availability of alternative occupations, investment in vessels and gear;
   (2) extent of past participation in the fishery, including but not limited to the number of years participation in the fishery, and the consistency of participation during each year.
   Former AS 16.43.250(a), Ch. 79, § 1, SLA 1973.
   The CFEC awarded Arkanakyak four points toward an entry permit based on her residence in Manokotak, where few alternative occupations to fishing are available. *See* 20 AAC 05.-620 (Eff. 12/18/74).

participation points in accord with a CFEC policy which generally denies participation points for years when an applicant did not hold a commercial fishing license. The Commission granted her a supplemental hearing in 1982. The CFEC subsequently adopted the hearing officer's recommendation to deny her points for crew participation.

Arkanakyak then petitioned the Commission to reconsider its decision. In her petition, she no longer asserted that she was in fact licensed, but claimed she believed that she was licensed when she participated in the fishery as a crew member. Arkanakyak argued for the first time that her mistaken belief that she was licensed, and consequently her failure to actually obtain a license during the 1971 and 1972 seasons, was excusable due to her inability to speak English and the fact that she was not required to have a license while fishing with her husband for several years prior to his death.[5] Arkanakyak's petition for reconsideration stated in part that:

> [T]he applicant speaks no English at all. She apparently has always fished in a relationship where she has not been required to secure a license. 1971 and 1972, according to the CFEC records, would therefore have been the first years that she was in a situation where she was required to purchase a commercial license of her own. She should not be penalized for her ignorance of the law where it would not be reasonable to expect her to have a license under the circumstances. There is no question that

she actually participated during those years, and her testimony evinced an understanding that she was properly licensed.

The CFEC refused to reconsider its decision. It denied Arkanakyak's petition for reconsideration, concluding that Arkanakyak "failed to specify new evidence which would have a substantial bearing on the decision." The CFEC's decision did not explicitly address Arkanakyak's claim that alleged circumstances in her case excused her nonlicensure for the 1971 and 1972 seasons.[6]

Arkanakyak then sought review of the CFEC's determination in superior court. The superior court affirmed the CFEC's denial of past crew participation points to Arkanakyak. This appeal followed.

In this appeal Arkanakyak argues that by applying its policy against awarding crewing points to unlicensed applicants to an applicant in her circumstance, the CFEC unjustly discriminated against her in violation of AS 16.43.010(a).[7] She also contends the Commission violated the equal protection clause of the Alaska Constitution when it denied her crew participation points, because the Commission routinely grants past crew participation points to unlicensed minors.

## II. CREW PARTICIPATION POINTS.

CFEC regulations provide that the Commission will award points toward a limited entry permit based on an applicant's number of years participation in the fishery as

---

**5.** Arkanakyak's testimony at her first hearing before the CFEC suggests that in 1971 and 1972 she believed she had a license arising from her relationship to another person:

> Hearing Officer: Okay. And were [the licenses for 1971 and 1972] crewman's licenses, commercial licenses, or gear licenses that she [Ms. Arkanakyak] held?
> Ms. Kitchuk [translating for Ms. Arkanakyak]: The type, you know, when you're a partner you get [a] license? Them kind of licenses—partnership licenses.

**6.** Arkanakyak should be allowed to make this argument despite the fact that she raised the issue of her dependence on others for the first time in her petition for reconsideration. In *Jones v. Commercial Fisheries Entry Commis-*

*sion,* 649 P.2d 247 (Alaska 1982), a CFEC permit applicant raised an issue of special circumstances for the first time in a petition for reconsideration. We found the Commission's failure to consider that issue had the potential to result in unjust discrimination and remanded the case to the CFEC. *Id.* at 251.

**7.** Alaska Statute 16.43.010(a) provides:

> It is the purpose of this chapter to promote the conservation and the sustained yield management of Alaska's Fishery resource and the economic health and stabiltiy of commercial fishing in Alaska by regulating and controlling entry into the commercial fisheries in the public interest and without unjust discrimination.

a crewman. 20 AAC 05.610(1) (Eff. 12/18/74); 20 AAC 05.630(4) (Eff. 12/18/74). CFEC regulations do not define the term "crewman." However, based on a general policy and past CFEC decisions, the Commission does not award points for crewing to applicants who did not hold a commercial fishing license during their participation in the fishery as crew members. In a previous CFEC decision on a disputed limited entry permit, the Commission justified its no license, no point credit policy for past crew participation as follows:

> The primary reason for requiring a commercial license is that the point system would be subject to abuse if none were required. It would be relatively easy to obtain an affidavit from someone an applicant knows; the requirement of actually having a commercial license provides a check on a possible unbridled abuse of the point system.

CFEC Case File Dec. 75–7 (1975).

However, CFEC's general policy of crediting crew participation points only to those who held commercial fishing licenses at the time they crewed is not absolute. In the decision cited above, the CFEC considered whether to make an exception to this policy. Terming its licensure requirement "an evidentiary standard ... amendable [sic] to change according to the factual situations that arise," the Commission decided to exempt a minor applicant from this requirement. It reasoned that the minor was dependent on his father to inform him of the legal requirements to engage in commercial fishing, and that his father's failure to purchase the necessary license did not bear on the minor's qualifications for crew participation points. *See* CFEC Case File Dec. 75–7 (1975). Subsequent CFEC decisions have relied on this case to award crew participation points to other unlicensed minors. *See* CFEC Case File Dec. 75–498 (1982); CFEC Case File Dec. 75–141 (1976).

In this appeal, Arkanakyak argues that her situation is similar to that of a minor. She does not speak or understand English, nor can she write in any language. Therefore, Arkanakyak maintains that she was dependent upon others to inform her of the legal requirements to engage in commercial fishing and assist her in obtaining necessary licenses, and argues that the CFEC should have granted her application for crew participation points because it routinely awards points to unlicensed minors faced with similar circumstances. The CFEC's failure to treat her as it treats dependent minors, she claims, constitutes unjust discrimination within the meaning of AS 16.-43.010(a) and denies her equal protection of the law.

Additionally, Arkanakyak contends the Commission may only deny crew participation points to applicants who knowingly or deliberately worked on a fishing crew without a commercial license. Arkanakyak maintains that she believed in good faith that she had a license during her crewing activities in 1971 and 1972 because of her earlier fishing activities with her husband. Arkanakyak alleges that the CFEC's failure to award her crew participation points in light of her unknowing failure to obtain a license also is unjustly discriminatory and violates equal protection. To evaluate these arguments, the CFEC's basis for denying Arkanakyak points for crewing must be examined.

In proceedings before the CFEC on her application for a limited entry permit, Arkanakyak argued that she was entitled to points for crewing because she had a license during the time she allegedly crewed at Iguishik Beach in 1971 and 1972. The CFEC, after searching its records, concluded that Arkanakyak was not in fact licensed at that time and denied her points for crewing on that basis in accord with its general policy. Arkanakyak then petitioned the CFEC to reconsider its decision. She no longer asserted that she held a commercial fishing license during the 1971 and 1972 seasons, but argued that her nonlicensure was excusable due to her belief that she was licensed and on the further ground that she was totally dependent on others to assist her in obtaining licenses. The CFEC concluded that these contentions did not have a substantial bearing on its decision, and thus denied Arkanakyak's petition for reconsideration.

■ On the basis of this record, we conclude that Arkanakyak's statutory and constitutional claims are not ripe for review. The only factor the CFEC considered in deciding whether to award Arkanakyak points for crew participation was whether she had a commercial fishing license. After determining that she had not obtained a license for the 1971 and 1972 seasons, the Commission denied Arkanakyak's application for crew participation points based solely on its policy against awarding points to persons who were unlicensed at the time they participated in the fishery. In her brief, Arkanakyak explicitly emphasizes that she does not challenge this policy. Therefore, her claims that the CFEC acted unlawfully or unconstitutionally in denying her application are not properly before this court.

■ This conclusion, however, does not end our inquiry. In *Jones v. Commercial Fisheries Entry Commission*, 649 P.2d 247, 250–51 (Alaska 1982), we held that "the CFEC's failure to consider [the applicant's] situation as a whole had the potential to result in unjust discrimination." Accordingly, we remanded with insructions that the Commission consider the applicant's special circumstances. We think the same reasoning governs the instant case. The Commission views its licensure requirement as a flexible evidentiary standard, at least in regard to minors. CFEC decisions demonstrate that the Commission considers minors' dependence on others for information on the legal requirements of commercial fishing, as well as their dependence on others for assistance in obtaining the licenses themselves, important factors in making exceptions for minors to the Commission's policy of refusing crewing points to unlicensed applicants. The CFEC has apparently never considered whether to make a similar exception for unlicensed adults who, due to cultural and language barriers, also must depend on others for assistance in obtaining commercial fishing licenses. The Commission likewise did not consider making such an exception in the instant case. It simply denied Arkanakyak's application for crewing points when it determined she did not have a commercial · fishing license. Because we see similarities between youthful crew members who must rely on a parent or guardian for assistance in obtaining a license and a non-English speaking Alaska Native who necessarily relies on others to satisfy the legal requirements for commercial fishing, we conclude that the CFEC's failure to consider Arkanakyak's dependence on others has the potential to result in unjust discrimination. Accordingly, we remand the matter to the CFEC for explicit determination as to whether the factual circumstances relating to Arkanakyak's application for crewing points warrant granting an exception in her case to the Commission's licensure requirement.[8]

REVERSED and REMANDED.[9]

MATTHEWS, Justice, joined by BURKE, Justice, dissenting.

There are two lines of authority established by Commission precedent. With respect to minors, there is a presumption which is rebuttable by competent evidence that a minor who has fished as an unlicensed crew member will not be considered as a crewman for crew participation points. With respect to adults, the presumption is irrebuttable. One who has fished as an unlicensed crewmember will not receive crew participation points regardless of other evidence that the applicant fished as a crewmember.

8. Whether the CFEC's general policy of not awarding crewing points to unlicensed applicants is subject to exceptions for adults is in the province of the CFEC to decide on remand. We express no opinion as to whether unlicensed dependent adults are entitled to crew participation points; we simply hold that the Commission should consider this question in order to avoid the potential for unjust discrimination.

9. We note that the parties appear to disagree over whether Arkanakyak in fact participated in the Bristol Bay fishery as a crew member in 1971 and 1972, and also dispute whether Arkanakyak knew or should have known in 1971 and 1972 that she did not have a commercial fishing license. These factual determinations are for the CFEC to make, if necessary, upon its reconsideration of the matter.

The issue which was raised in this case is whether the Commission's rule that adults who have fished as unlicensed crewmembers are ineligible to receive crew participation points was unlawfully discriminatory as applied to the appellant. In my view, there was no unlawful discrimination. The rule in the case of adults is readily justified in order to prevent fraud and because it is against public policy to reward illegal conduct. The fact that the Commission has made the presumption merely rebuttable with respect to unlicensed minors does not mean that a rebuttable presumption must also be applied to adults. The exception for minors is merely a manifestation of the general rule that minors are not legally responsible for their civil acts. Adults, however, are legally responsible, and applying one rule to adults and another to minors based on this distinction seems well justified.

For these reasons, I would affirm the decision of the superior court, which affirmed the decision of the Commission.