**UNITED UTILITIES, INC., Appellant and Cross–Appellee,**

v.

**ALASKA PUBLIC UTILITIES COMMISSION, Appellee,**

**Summit Telephone Company, Appellee and Cross–Appellant.**

Nos. S–7019, S–7099.

Supreme Court of Alaska.

March 28, 1997.

Kevin G. Clarkson, Brena & McLaughlin, P.C., Anchorage, for Appellant/Cross–Appellee United Utilities, Inc.

Ron Zobel, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee Alaska Public Utilities Commission.

Margaret J. Rawitz, Hoge & Lekisch, Anchorage, for Appellee/Cross–Appellant Summit Telephone Company.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

FABE, Justice.

### I. INTRODUCTION

This appeal arises from a decision by the Alaska Public Utilities Commission (APUC) to grant the application of Summit Telephone Co. (Summit) and to deny the application of United Utilities, Inc. (United) to provide telephone service to the communities of Coldfoot and Wiseman. United contends that the APUC failed to follow its prior decisions regarding the factors to be considered in choosing between competing applications and that the APUC's decision is not supported by the record. United also argues that the APUC violated its right to due process under the Alaska and United States constitutions. The superior court upheld the APUC's decision. We affirm.

### II. FACTS AND PROCEEDINGS

Coldfoot is a small village located at the southern edge of the Brooks Range on the Dalton Highway. Wiseman is an old mining town about ten miles from Coldfoot. Both communities currently have expensive and unreliable telephone service. All calls from Wiseman must be routed through an interconnection in Coldfoot to the long-distance carrier. Summit and United filed applications to provide modern telephone service to these communities. The APUC scheduled a hearing for January 25, 1992, to consider the competing applications.

Summit and United proposed different methods of linking Coldfoot and Wiseman. United's filings called for a permanent microwave system that would transmit signals between two towers. Summit proposed to handle traffic between the two communities by Basic Exchange Telephone Radio Service, to be replaced within five years by buried cable. The applications also revealed the difference in the size of the two companies. United provides telephone service to fifty-six communities and employs more than 100 people. Summit has four employees and provides service to about sixty subscribers in two areas.

In Summit's written testimony filed with the APUC, Perry Stoop, the founder, general manager, and part owner of Summit, stated that United's plan to use a microwave system would not work as proposed because of obstacles in the signal's path. He testified that the system would work only if United, at a cost higher than its estimate, built taller towers or installed a repeater. In response, United filed supplemental testimony from B. Charles Russell, the vice president of operations and engineering for United, stating that United had recently developed a "better path" between Coldfoot and Wiseman. Russell stated that the new path, while still obstructed and $10,000 more expensive than the original proposal, would provide "a workable system." The supplemental testimony was based on the work of Jack Reed, a consultant hired by United, but United did not file testimony from Reed or include Reed on its witness list.

After Russell's testimony, United offered to call Reed as a witness and sought to introduce two new exhibits to support Reed's testimony. The hearing officer refused to admit the testimony and exhibits, stating that United was "simply too late."

On February 24, 1993, the APUC approved Summit's application to serve Coldfoot and Wiseman and denied United's application. The APUC noted that its "decision [was] based primarily on two important points." First, it concluded that United "simply has

not ... demonstrated" its ability to "extend satisfactory service to Wiseman." Second, the APUC found that Summit's plan "to install cable between Coldfoot and Wiseman is the best way to ensure adequate and satisfactory service in Wiseman."

After United's motions for reconsideration and a trial *de novo* were denied by the APUC, it appealed to the superior court. Superior Court Judge Karen Hunt affirmed the APUC's decision in its entirety.

## III. *DISCUSSION*

### A. *Standard of Review*

We apply a "reasonable basis standard of review to administrative determinations of complex issues involving agency expertise and specialized knowledge." *Cook Inlet Pipe Line Co. v. Alaska Pub. Utils. Comm'n*, 836 P.2d 343, 348 (Alaska 1992). Under this standard of review "we give deference to the agency's determination 'so long as it is reasonable, supported by the evidence in the record as a whole, and there is no abuse of discretion.'" *Id.* (citations omitted). This is the appropriate standard of review in determining whether the APUC abused its discretion by failing to follow its own adjudicative precedents.

We review the APUC's findings of fact under the substantial evidence test. *Municipality of Anchorage, Police & Fire Retirement Bd. v. Coffey*, 893 P.2d 722, 726 (Alaska 1995). Substantial evidence exists if, considering the record as a whole, the quantum of evidence is substantial enough such that a reasonable mind might accept the APUC's decision. *Id.* at 726. Under this standard, we do not independently weigh the evidence but only determine whether such evidence exists. *Id.*

In considering an appeal from a judgment of the superior court acting as an intermediate court of appeal, we give no deference to the superior court decision. *Cook Inlet Pipe Line Co.*, 836 P.2d at 348.

### B. *Did the APUC Abuse Its Discretion by Failing to Follow Its Own Adjudicative Precedents?*

United argues that the APUC abused its discretion by basing its decision on the quality of the applications rather than on an "analysis of which *applicant* is best suited to serve the public interest." The APUC has stated that under AS 42.05.241, "[w]here competing applicants seek a certificate that may be issued only to one entity, the [APUC] must select the applicant it considers the most fit, willing and able of those who demonstrate threshold levels of fitness, willingness and ability to serve." *Re Applications for a Certificate of Public Convenience and Necessity to Operate as a Telecommunications (Cable Television) Public Utility in the Anchorage Area*, 2 A.P.U.C. 527, 533–34 (1979). The factors relevant to the selection process may be divided into three categories: (1) internal strengths; (2) external strengths; and (3) miscellaneous indicia of fitness and ability. *Id.* at 538. The category of "internal strengths" includes "organization; financial backing; technical facilities and equipment, including proposals for engineering and construction of plant to be built; operations expertise; and management and administrative experience." *Id.* These five factors establish a "threshold" that all applicants must meet. *Id.* Once the APUC has made this initial inquiry, it considers "external strengths." *Id.* at 539. These factors "focus on the interface between the applicant and the public" and include the rates proposed by the utility, its track record, and its demonstrated alertness to consumer needs or desires, as well as any indications of consumer preferences. *Id.* Finally, the "miscellaneous indicia of fitness and ability" include, among other factors, the "quality of application or filing." *Id.*

In addressing the threshold factors in this case, the APUC concluded that although United had sufficient organization, financial backing, expertise, and experience, it failed to establish the adequacy of its proposal for engineering and construction of the microwave system. The APUC stated that "it is extremely doubtful that, without additional evidence and explanation, [United] would be granted even an unopposed, noncompeting application to extend its service area."

In contrast, the APUC concluded that Summit, in addition to demonstrating "signif-

icant technical, operational, and managerial acumen" and "satisfactory arrangements for financing," also fully supported all aspects of its proposal. As to the factors in the "external strengths" category, the APUC found that Summit's plan for a buried cable would "better serve the needs of Wiseman." It noted United's advantage in consumer preference, but also gave a reasonable explanation why that preference did not outweigh other factors. It also found that other factors in this category, including the proposed rates, did not favor either company. Finally, in considering the miscellaneous factors, the APUC found that the quality of Summit's application and filings was superior to those of United.

Our review of the APUC decision indicates that it had a reasonable basis for its consideration and weighting of the relevant factors in this case. Contrary to United's assertion, the APUC did consider the strengths and weaknesses of each applicant. In accordance with the specific provisions of its prior decisions, the APUC also considered the strengths and weaknesses of the applications. Indeed, United's distinction between "applicant" and "application" strikes us as somewhat artificial; certainly, the APUC must base its evaluation of an applicant at least partly on the quality of its application. United's argument, taken to its logical conclusion, would force the APUC to ignore the nature and quality of a proposal and base its decisions solely on the identity of the competing applicants. Such an approach would not be in line with the APUC's statutory mandate under AS 42.05.241 or its past practice. Therefore we hold that the APUC did not abuse its discretion in denying United's application and approving Summit's based on a consideration of both the applications and the applicants.

C. *Were the APUC's Findings with Regard to United's Microwave System, Summit's Cable System, and Summit's Financial Capabilities Supported by Substantial Evidence?*

1. *United's microwave system*

 United contends that the APUC's finding that United's "ability . . . to extend satisfactory service to Wiseman simply has not been demonstrated in the record of this proceeding" is not supported by substantial evidence. The APUC based this finding on United's significant modification of its proposal less than a week before the hearing, its failure to establish how the power and space requirements for the modified proposal would be met, and its lack of explanation for how it would interconnect with the long-distance provider. It also noted that the proposed path was obstructed and that "[t]here is some dispute whether the newly proposed microwave path is adequate." In its decision denying United's petition for reconsideration, the APUC further stated that the engineers for both Summit and United testified that they did not know of other instances in which an obstructed microwave path like that proposed by United had been used for commercial telephone service.

We hold, in light of the above, that the APUC's findings regarding the potential problems with United's proposed microwave system were based on substantial evidence in the record. Our role in reviewing the APUC's decision is not to reweigh the evidence, but only to determine whether substantial evidence for the APUC's decision exists. *Municipality of Anchorage, Police & Fire Retirement Bd. v. Coffey,* 893 P.2d 722, 726 (Alaska 1995). As the APUC stated, United might have eventually been able to "perfect its application" and demonstrate that its proposal would provide adequate service. However, the APUC, which has the duty and expertise to evaluate such proposals, found that United failed to make this demonstration when it had the opportunity.

2. *Summit's cable system*

 United also challenges the APUC's finding that Summit's proposal to link Coldfoot and Wiseman by cable "is the best way to ensure adequate and satisfactory service in Wiseman." It argues that "Summit did not even present an elementary plan for serving Coldfoot and Wiseman by cable." Summit, however, did estimate the cost of installing buried cable, and a Summit employee testified that he had studied the cable route and visited the area. Furthermore,

Summit has experience with installing buried cable. Finally, the APUC appears to have based its decision partly on its familiarity with cable as a proven technology compared to microwave systems. These considerations provide substantial support for the APUC's finding that Summit's plan to install buried cable between Wiseman and Coldfoot "will better serve the needs of Wiseman" than a microwave system over an obstructed path.

### 3. *Summit's financial capabilities*

United finally argues that the record does not support the APUC's finding that "Summit has adequate financial resources, and has made satisfactory arrangements for financing, to provide the service for which it applied." Summit proposed to finance its service partially with a loan from the Rural Telephone Finance Cooperative (RTFC). Summit had twice before received loans from RTFC and presented testimony and evidence that further requests for financing would be successful. It also presented testimony that it could use a savings account and funds from a previous loan to finance its proposal. The APUC noted that the RTFC had not given final approval to a loan for the project, but stated that this was "not significant" because "[f]inal commitments typically come after legal authorization to provide service." We hold that this evidence is sufficient to support the APUC's finding that Summit was capable of financing its proposal.

### D. *Did the APUC Violate United's Due Process Rights?*

United also argues the APUC violated its right to due process under the Alaska and United States constitutions. United failed to raise this issue before the superior court and in its points on appeal. We will not consider arguments that were neither raised below nor included in the points on appeal "unless the new issues either establish plain error or 1) do not depend on new or controverted facts; 2) are closely related to the appellant's arguments at trial; and 3) could have been gleaned from the

pleadings." *Arnett v. Baskous,* 856 P.2d 790, 791 n. 1 (Alaska 1993). United's due process argument does not meet this standard, and therefore we will not consider it.

## IV. CONCLUSION

The APUC had a reasonable basis for denying United's application and granting Summit's application to provide telephone service to the communities of Coldfoot and Wiseman, and its decision was supported by substantial evidence in the record. Therefore we AFFIRM the APUC's decision and the judgment of the superior court.[1]

---

1. Because we affirm the APUC's decision, we do not need to consider Summit's cross-appeal in this matter.