[Civ. No. 4582. Third Appellate District.—June 27, 1932.]

ELMER SWANSON, Respondent, v. JESSICA SIEM, as Administratrix, etc., et al., Appellants.

William N. Graybiel for Appellants.

G. B. Hjelm and Harold L. Hjelm for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment which was rendered in favor of the plaintiff in a suit in replevin, which was brought by a surviving partner against the administratrix of the estate of the deceased partner and others, to recover the possession of partnership property.

The appellant contends the findings and judgment are not supported by the evidence; that the cause was for an accounting and that the trial court was without jurisdiction to render judgment for the reason that no claim was filed against the estate of Siem under the provisions of section 1500 of the Code of Civil Procedure (sec. 716, Probate Code), and that the court erred in admitting evidence of declarations of the deceased partner as proof of the existence of a copartnership.

The complaint alleges that in January, 1924, the plaintiff and Ernest Siem entered into an agreement of copartnership for the purpose of engaging in the business of raising,

purchasing and marketing livestock; that they were each to furnish real property for the raising and care of the stock, devote their personal attention to the business and participate equally in the profits and losses thereof. It was then alleged that Ernest Siem died January 11, 1930, and that upon proceedings duly had, the defendant, Jessica Siem, the wife of said deceased person, was appointed and qualified as administratrix of his estate; that a specified number of cattle and hogs of the value of $8,000 and farming implements which were described and located on the "Swanson Ranch" belonged to the copartnership business, but were possessed and claimed by the defendant Jessica Siem as a part of the estate of her deceased husband; that the defendant Kee, and Mendoza were indebted to the copartnership in specified sums which were also claimed as property of the estate of the deceased partner; that prior to the commencement of this action the plaintiff demanded of the defendants the possession of said partnership property and an accounting of the partnership transactions, which were refused; that the defendant Jessica Siem had sold certain cattle and threatened to continue to sell the stock belonging to the copartnership. Thereupon an injunction was asked restraining the sale of said partnership property, and a decree was demanded for the return of the personal property. or payment of the market value thereof for failure to do so. The prayer of the complaint also asks for an accounting of the partnership transactions.

No demurrer to this complaint was filed. The defendants answered controverting the essential allegations of the complaint, denying the existence of the alleged copartnership, and claiming that all of said property belonged to the estate of Ernest Siem, deceased. At the trial findings were adopted favorable to the plaintiff, and a judgment awarding him the possession of the property, or compensation for its value in the event of failure to deliver the same, was rendered. From this judgment the defendants have appealed.

It is apparent from the pleadings this is a proper suit in replevin on the part of the surviving partner, under the provisions of section 1585 of the Code of Civil Procedure (sec. 571, Probate Code), to regain and "continue in possession of the partnership, and to settle its busi-

ness". (*Fong Sing v. O'Dell*, 50 Cal. App. 55 [194 Pac. 745]; *Perelli-Minetti* v. *Lawson*, 205 Cal. 642, 651 [272 Pac. 573].) This action is essentially one of replevin. The demand for an accounting to determine what property actually belongs to the partnership assets does not change the nature of the proceeding. The requested accounting is merely incidental to the demand for possession of the property. There appears to be no statutory inhibition against the survivor of a copartnership maintaining an action for accounting against the representatives of a deceased partner. (20 Cal. Jur. 829, sec. 121; *Raisch* v. *Warren*, 18 Cal. App. 655 [124 Pac. 95]; *Link* v. *Haire*, 82 Mont. 406 [267 Pac. 952, 957].) The most that may be said of the case of *McKay* v. *Joy*, 70 Cal. 581 [11 Pac. 832], upon which the appellants in this case rely, is that the court holds there is no necessity for maintaining a suit in equity because section 1585, *supra*, furnishes ample authority for the surviving partner to acquire possession of the partnership property.

In a suit for replevin, on the part of a surviving partner, it is proper to offer any competent evidence to identify and determine what property actually belongs to the partnership business.

The findings and judgment to the effect that a copartnership existed between the plaintiff and the deceased, Ernest Siem, are sufficiently supported by the record, in spite of the existence of a sharp conflict of evidence in that regard.

The question of the existence of a copartnership is a mingled problem of law and fact. (20 R. C. L. 849, sec. 55.) In the absence of a written declaration of copartnership, it must ordinarily be determined from the transactions, conduct and declarations of the alleged partners. It is usually essential to prove it was the intention of the parties to engage in a copartnership business. (Sec. 2397, Civ. Code; 20 Cal. Jur. 686, sec. 7.) The burden is on the one asserting the existence of a copartnership to prove it by competent evidence. Before a partner may be charged, as such, by his declarations, a *prima facie* showing of the existence of the copartnership should be first established. (Sec. 1870, subd. 5, Code Civ. Proc.; 2 Jones' Commentaries on Evidence, 1726, sec. 935.) After the existence of the copartnership has been shown by *prima facie* evidence

thereof, "the admissions and conduct of the several parties in the course of the copartnership business are admissible as against the others". (*Dennis* v. *Kolm,* 131 Cal. 91 [63 Pac. 141, 143]; 1 Lindley on Partnership, 2d ed., 128, note 2.)

A copartnership is defined by section 2395 of the Civil Code, as the statute then existed, as "the association of two or more persons, for the purpose of carrying on business together and dividing the profits between them". An express agreement of the parties is not necessary to constitute a copartnership, but it may be assumed to have been organized from a reasonable deduction from the acts and declarations of the parties. (*Niroad* v. *Farnell,* 11 Cal. App. 767 [106 Pac. 252].) The Uniform Partnership Law of California, which was adopted in 1929, section 2401 of the Civil Code, subdivision 4, provides: "The receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business." ▇ In the present case, a *prima facie* showing of the existence of a copartnership is established, independently of the evidence of declarations to that effect. It satisfactorily appears that the plaintiff owned ten acres of land near Turlock upon which he raised and fed in 1928 and in 1929 seven or eight hundred hogs. Most of these hogs were purchased with capital furnished by the deceased Ernest Siem. This ranch was also used to store grain and feed for hogs and cattle which were also purchased by the deceased. The plaintiff received neither rent for his land nor wages for his services. Both hogs and cattle were raised in this manner and marketed. Occasionally they were sold by the deceased and sometimes they were marketed by the plaintiff. The profits derived upon the sale of such stock were divided equally· between the deceased and the plaintiff. The truck which was used in the business contained a sign which read "Siem & Company". Mr. Siem had no other partner. A common bank account was also maintained in the name of "Siem & Company". The proceeds from the sale of cattle and hogs were deposited in this account. The plaintiff was permitted to and frequently drew checks upon this account in payment of their business transactions, which checks were signed "Siem & Company, By Elmer Swanson". George Olson who was employed on the hog ranch as a farm hand was paid by

the plaintiff with checks which were signed as above indicated. Mr. Landram, who purchased hogs on several occasions at the request of the deceased, consummated these transactions with Fred, the son of Ernest Siem, and received his pay from the plaintiff by means of a check on the Siem & Company fund. These and other circumstances disclosed by the record furnish a sufficient *prima facie* showing of the existence of a copartnership in the livestock business to authorize the proof of admissions of the deceased with reference to the existence of a copartnership relation with the plaintiff. These admissions of the deceased which were related by several disinterested witnesses, taken in conjunction with other facts and circumstances disclosed by the record, furnish ample evidence to support the findings and judgment to the effect that the deceased and the plaintiff were engaged in the copartnership business of raising, buying and selling livestock. Mr. Landram testified to a conversation which he had with the deceased in which he said with respect to the purchase of hogs: "If you buy that stock, . . . call me up, and I will either come or I will send my partner, Mr. Swanson, and whatever he does will be all right." Mr. Olson related a conversation which he had with the deceased regarding the sign "Siem & Company", which appeared upon their truck. He asked the deceased what that sign meant. The deceased replied, "That means we are in partnership, that means we are a company." The witnesses Pedras, Johnson and Radford testified to similar admissions of the existence of a copartnership.

These and other similar declarations were admitted in evidence over the objections of the defendants on the ground that they were incompetent until *"after proof of a partnership"* had first been adduced, as required by subdivision 5 of section 1870 of the Code of Civil Procedure. The plaintiff asserted this order of proof was discretionary on the part of the judge, who tried the case without a jury, and agreed to supply the evidence of the existence of the copartnership later in the course of the trial. The rulings of the court upon these objections were reserved. Inadvertently these objections were not passed upon. We must, however, assume the defendants sufficiently preserved their objections to squarely raise the question.

The admission of declarations of the partner with relation to the existence of the copartnership prior to the establishment thereof, under the circumstances of the present case, is not reversible error. In view of the plaintiff's assurance that he would subsequently supply proof of the existence of the copartnership, the admission of these declarations was a mere exercise of discretion in determining the order of proof. There appears to have been no abuse of discretion on the part of the court. The cause was tried without a jury. The mere order of proof was harmless. (*Bates* v. *Tower,* 103 Cal. 404 [37 Pac. 385]; *Jacobson* v. *Lamb,* 91 Cal. App. 405, 417 [267 Pac. 114].)

 There is no merit in appellants' contention that this action for replevin may not be maintained without first filing a claim against the estate of the deceased partner, notwithstanding the fact that an alternate money judgment was rendered as compensation in the event the property could not be restored to the surviving partner.

In an action for replevin of personal property which is instituted against the administratrix of a deceased partner, it is unnecessary to file a claim under the provisions of section 1500 of the Code of Civil Procedure (sec. 716, Probate Code) as a prerequisite to maintaining the action. Claims are required to be filed for "such debts and demands against the decedent as might, if due, have been enforced against him *in his lifetime by personal actions for the recovery of money,* and upon which only a money judgment could have been rendered". (11 Cal. Jur. 651, sec. 371.) In 11 Ruling Case Law, 190, section 210, it is said such claims are required to be filed for "debts or demands of a pecuniary nature which could have been enforced against the deceased in his lifetime, and could have been reduced to simple money judgment". (24 C. J. 322, sec. 943.) It is apparent that a claim of one partner against another for the possession of partnership property does not exist during their lifetime. Each partner is equally entitled to the possession of partnership property. It is not necessary to present a claim against the estate of a deceased person for a cause of action which arises after his death. (24 C. J. 330, sec. 952.) The language of the court which is used in the matter of the *Estate of Dutard,* 147 Cal. 253, 256 [81 Pac. 519, 520], is peculiarly applicable to this case where

a surviving partner seeks to recover possession of partnership property by virtue of the provisions of section 1585 of the Code of Civil Procedure. The court there says:

"It is well settled that one who claims as his own, adversely to an estate, specific property held and claimed by the estate, cannot be called a creditor of the estate within the meaning of the probate law. The decisions are clear and conclusive upon the proposition that where one seeks to recover from the representatives of an estate specific property alleged to have been held in trust by the decedent at the time of his death, he is not seeking payment of a claim from the assets of the estate, is not required to present a claim as a creditor, and is not a 'creditor of the estate'. His action is not founded upon a claim or demand against the estate."

▇▇ The fact that some of the livestock which belongs to the partnership business was sold after the commencement of this suit by stipulation of counsel and the proceeds thereof impounded with the clerk subject to the order of the court and the determination of this action, does not alter the plaintiff's remedy, nor require the filing of a probate claim. The character of the property was transformed from livestock to cash by stipulation of the parties, and paid into court subject to the final decision of the court. This was for the mutual accommodation of the parties, and did not change the nature of the action, nor the remedy which is available. This procedure was first suggested by the court. The judge said: "Sell the hogs and impound the money waiting the decision of the court, don't go to any more expense." That was done. Some $4,000 was thus placed in the hands of the clerk. The court further said: "I suppose that money, under the stipulation, is to be subject to the judgment of the court?" Mr. Graybiel, attorney for the defendants, replied: "That is understood." Regarding this stipulation the following colloquy occurred: "The Court: . . . They (the hogs) were sold, as I remember, by agreement? Mr. Hjelm: Yes. The Court: . . . And the money deposited? Mr. Hjelm: That is right." The defendants did not contradict this assertion that the hogs had been sold by stipulation of the respective parties and the proceeds deposited with the clerk subject to the final determination of the action. This colloquy amounted to an acknowledg-

ment on the part of the defendants that the livestock was so sold by stipulation and the proceeds of sales impounded with the clerk subject to the court's order. Since the court found that the stock belonged to the partnership business, the proceeds of the sales thereof by stipulations were properly awarded to the plaintiff. This did not constitute a money judgment based upon a suit against the estate of the deceased partner which required the filing of a probate claim as a prerequisite to the maintaining of the action.

The judgment was properly rendered against Jessica Siem, personally. Her appropriation of partnership property which did not belong to the estate was an act in excess of the authority of her trust as administratrix. She is, therefore, required to account for the property, both personally and in her representative capacity.

The judgment is affirmed.

Parker, J., *pro tem.*, and Plummer, Acting P. J., concurred.

A petition for a rehearing of this cause, was denied by the District Court of Appeal on July 27, 1932.