**Gilbert INNES, Appellant,**

v.

**Clarence J. BEAUCHENE, Appellee.**

**No. 86.**

Supreme Court of Alaska.

March 1, 1962.

Rehearing Denied April 11, 1962.

Warren A. Taylor, Fred D. Crane, of Taylor & Crane, Fairbanks, for appellant.

T. N. Gore, Jr., Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

The only question to be decided is whether the trial court erred in finding that appellant was a partner in a mining enterprise with Howard Nelson and Charles Baxter.

The complaint was one for wages and named appellant, Nelson and Baxter, d/b/a Swede Nelson Enterprises, as defendants. A single answer with a single allegation was filed on behalf of all defendants which denied that they were *not* co-partners as alleged in the complaint. The actual intent of the answer obviously was to deny the alleged partnership and admit the claim for wages. Although the pre-trial order stated that "the defendants did not make any statement as to their respective positions", it

further stated that it was admitted that plaintiff was hired by someone to do the work, that he did it and was owed $3,671.20 plus interest. The order also provided that "It is anticipated that the only issue of law will be that involving the applicability of the Uniform Partnership Act to the facts of the case."

After trial before the court without a jury, the court found that:

1. On June 26, 1957, Defendants, as co-partners d/b/a Swede Nelson Enterprises, employed Plaintiff as a heavy duty equipment operator to perform work for them at a gold mine being operated by said enterprise.

Plaintiff had judgment against the defendants. Only the defendant Innes has appealed. The defendants Nelson and Baxter did not appear at the trial and according to appellant Innes' brief they "did not contest the issues".

Appellee testified that he was acquainted with all three defendants as he had been "up there mining for all three of them"; that he was hired by Baxter out of a garage at Sixteen Mile to go to the Middle Fork of the Chistochina River to run the shovel and weld; that several times he had conversations with Baxter about the three of them being partners, and that such a discussion occurred at the garage when appellee was hired. Appellee worked at the mine about two months and ten days. During this period appellant came to the mining camp a couple of times, would stay a day or so and then leave. On these occasions he spent most of his time looking around. Appellee stated that on these visits he didn't discuss with appellant the business relationship between appellant, Baxter and Nelson, "but he—whenever anything came up, like when a motor burned up, they came and got another one, and so on, he kept referrin' to ever'thing as 'We're gonna do this', or 'We're gonna do that'". On appellant's last trip to the mine he stayed a number of weeks and worked with the rest of them, mostly running the sluice box. Appellant was still there when appellee left. During appellee's stay at the mine he was furnished cigarettes, received a pair of shoes and was given a twenty dollar bill when he left. At the time of his leaving he was informed by Nelson that appellant would be down (to Fairbanks) in a few days to pay him off. Appellee testified that appellant's total stay at the mine on his last trip was about five weeks; that he went to appellant's house (in Fairbanks) two or three times a week, but that he was still at the mine. After appellant's return appellee testified that he kept coming to appellant's house for months trying to get his pay, but that appellant kept stalling him off from one week to the next. Appellee stated that he made fifteen or twenty trips to appellant's home, only to be told, "Come back and see me next week."

The witness Jack Parks testified that Baxter had priced an engine at his garage; that he would not sell it to Baxter for credit reasons; that appellant later came and bought the engine, and that Baxter hauled it down to the mine. He had not yet been paid for the engine. Parks was recalled as a witness for appellant and testified in response to a single question, that he wouldn't believe Slim Baxter on a stack of bibles. Appellee was also called as a witness by appellant and in response to one question stated that he had heard rumors that Baxter bragged a lot.

The only other witness called was appellant. He testified that he was the owner of the B & M Food Mart in Fairbanks; that he owned Arctic Neon Sign Co. and a one-half interest in the Glennallen Lodge at Glennallen, Alaska and that he sold groceries to Swede Nelson who was attempting to develop the Old Middle Fork Mine. He first visited the mine in June of 1957 when he flew Nelson in using his own private airplane. About a month later he went in to try and help them with an amalgam problem. On this occasion he took samples of the concentrates from the mine to the University and went over them with Dean Beistline. It was discovered that the gold had a vegetation film and that using cyanide in the amalgam

barrel would remove the film and permit the gold to amalgamate with the mercury. Upon learning this appellant returned to the mine to show Nelson what to do. · He again took groceries to the mine which he stated he was selling to Nelson on credit. On this occasion he stayed at the mine several weeks. Appellant stated on several occasions that he had no interest in the profits or proceeds of the mine; that he never held himself out as a partner; that his various efforts on behalf of the mining operation were made just to help Nelson out. Appellant admitted going to Parks' place of business with Baxter to load the engine, but stated that he thought Baxter had made arrangements for the engine; that although Parks felt he (appellant) had something to do with the purchase stated, "I didn't really feel that I was, at the time." Appellant admitted that Baxter had made a down payment on certain Tournapulls for the mine and that he (appellant) co-signed the conditional sales contract. Appellant admitted having conversations with appellee regarding payment for his work at the mine. He denied that he was putting appellee off as a stall but that they "all" expected that Swede Nelson would bring a clean-up of gold with him when he came in from the mine. Appellant admitted that a corporation was formed the following year to operate the mine and that he was one of the incorporators but stated that their first meeting had never been held. He testified that a lawsuit was developing over ownership of the mine between Nelson and the Middle Ford Mining Co. Appellant testified that he had been repaid for the groceries he had sold to Nelson on credit.

At the conclusion of the trial the judge gave an oral decision stating in part:

"There is some conflict of testimony here. The intention to conduct a business seems to be very evident. The defendant asks me to believe that he did all of these acts; obligated himself in connection with equipment, was involved with the motor owner, Mr. Parks, arranged for delivery of the motor, or assisted; he flew into this mine, used his airplane, furnished groceries at the time on credit * * * evidently; took an active interest, assisted in corrective measures for processing the gold, later was one of the incorporators for the business. This I am asked to pit against his involved statement that he did not have an interest in this company. This I cannot believe. I find for the plaintiff."

In a case of this nature the outcome must necessarily turn upon the question of which of the witnesses the judge believed and which he disbelieved. Here, the trial judge pointedly stated that he disbelieved appellant's statements that he did not have an interest in the company. In order to find that appellant was a member of the partnership he obviously accepted as fact the testimony of appellee and Parks on the issue as well as certain admitted acts of appellant which raised strong inferences that he had an interest in the partnership venture.

█ A partnership is defined by statute in Alaska as being an association of two or more persons to carry on as co-owners a business for profit.[1] The existence of the association may be proven by transactions, conduct and declarations, where no writing is available.[2]

As evidence in support of his finding the judge had the tacit admissions of Nelson and Baxter that a partnership existed and that they were members; the testimony of appellee that Baxter had on several occasions stated that appellant was a member of the partnership; the testimony of appellee that on appellant's several visits to the mine he acted and talked as though he had an interest in and some authority over the mining activities and the conduct of appellant throughout the summer and

1. Sec. 28–1–11(1), ACLA 1949—Uniform Partnership Act.

2. Swanson v. Siem, 124 Cal.App. 519, 12 P.2d 1053, 1055 (1932).

fall of 1957 with relation to the mining venture, which strongly supported the conclusion that he must have had a financial interest in the venture.

■ In addition, the judge had the testimony of appellant himself concerning several important aspects of the relationship. It is true that the judge stated that he disbelieved appellant's testimony that he had no interest in the partnership. But this does not necessarily means that appellant's testimony served no useful purpose to the judge in determining the truth of the issue. The judge may not only have disbelieved, but he may very well have concluded from some of appellant's denials and explanations that the exact opposite of appellant's testimony was in fact the truth. In Young Ah Chor v. Dulles [3] the court, in quoting from a previous decision [4] stated:

> "The trier of fact need not accept the uncontradicted testimony of a witness who appears before it, and the demeanor of that witness may be such as to convince the trier that the truth lies directly opposed to the statements of the witness. (Citing authorities.) This rule is particularly true where the witness is interested in the outcome of the case, or where his testimony is improbable or contains patent omissions and inconsistencies. (Citing authorities.)"

Several instances of where the judge may have concluded that the opposite of appellant's statements was the truth are scattered throughout the transcript. For example, on one occasion after appellant had given a series of forceful answers on direct examination to the effect that he had no interest in the proceeds or profits of the mine; that he had never held himself out as a partner and that the defendant Baxter's reputation for veracity was poor, he was turned over to counsel for appellee for cross-examination. The following is reported:

"Mr. Gore: Mr. Innes, it's your testimony that you had no interest of any kind in that mining operation during that * * * summer?

"Mr. Innes: No personal interest in it, no.

"Q. Well, did I understand you to state a response to Mr. Taylor's question that * * * you co-signed for the * * * Tournapulls * * *

(After vigorous objections to the question had been overruled, appellant answered.)

"Mr. Innes: I don't * * * I don't know whether it would be co-signing or what. I do know that I did place my signature on the contract * * * uh * * * for the purchase of the Tournapulls.

"Mr. Gore: That with * * * Miller and Bentley?

"A. That's right. I don't know whether that * * * I think it's a conditional sales contract to * * * I don't recall whether it was to 'Slim' Baxter or * * * or * * * Nelson."

Again, when cross-examined concerning Parks' testimony that he had used his credit to purchase a Cummins diesel for the mine after Parks had refused to sell the engine to Baxter on credit, the following transpired:

"Mr. Gore: Were you ever called upon by Mr. Parks to pay the four hundred dollars for the motor?

"Mr. Innes: Yes, I was. I think it was completely a misunderstanding on that thing. I was very sorry about it * * * but I really and truly felt that the complete arrangement had been made for the motor, and all I did was to help see that it was loaded, and on

3. 270 F.2d 338, 341 (9th Cir. 1959).

4. Mitsugi Nishikawa v. Dulles, 235 F.2d 135, 140 (9th Cir. 1956), reversed on other grounds, 356 U.S. 129, 78 S.Ct. 612, 2 L.Ed.2d 659 (1958).

the road to go. As a matter of fact, the time that Mr. Parks was talking about there * * * me being out there * * * I just went out to help load the motor and see that it was on the way, because * * * as you understand about Mr. Baxter you don't know whether you're gettin' the right time of day or not unless you saw to it that the thing was properly done."

Appellant admitted that after his return to Fairbanks from his five week stay at the mine, that appellee called often at his home and over an extended period of time, requesting payment for his work at the mine. When being cross-examined on this point the following transpired:

"Q. You heard Mr. Beauchene's testimony regarding your stalling him off, and telling him to come back to you next week, and so forth; did you in fact do that?

"A. Well, I didn't * * * do it intentionally as a stall to him. All of us expecting that when the Swede would get out of the mine, that Swede would pay him, and * * * that's what Swede had told me * * * that he was going to make a last ditch try to bring out enough to pay the men * * * and I expected him * * * there's no communication, and, I expected him from * * * almost one day to the next to come in with his clean-up."

■ The trial judge was asked to accept appellant's testimony that he flew his own airplane from Fairbanks to the remote mining operation on several occasions for the sole purpose of assisting Nelson and selling groceries on credit; that he assisted in the amalgam analysis at the University of Alaska then returned to the mine and spent approximately five weeks there operating the sluice box just to help Nelson out. At that time appellant was the owner and proprietor of a food mart and a neon sign

company in Fairbanks and a partner in the ownership of a roadhouse at Glennallen, Alaska. It is difficult to believe, without a more adequate explanation, that a man as occupied with his own business affairs as appellant must have been, had the time and inclination to do all that he did for the mining partnership solely out of a desire to assist Nelson. This is particularly so when we are informed by appellant's testimony that he himself was one of the incorporators of Middle Fork Mining Company, formed the following year for the purpose of working the same mining ground. There is sufficient evidence to support the court's finding.

■ Appellee testified that when he was hired by Baxter he was informed by Baxter that appellant was a partner in the mining company. He also testified that he had on several occasions discussed with Baxter the fact that the three of them were partners. This testimony was objected to on the ground that Baxter's statement was not made in appellant's presence and that no partnership had been shown to exist up to that time. The testimony was conditionally admitted by the trial court on the stated ground that a partner's admissions are admissible against the partnership, subject to being stricken if not otherwise tied in with other evidence of a partnership. The ruling of the trial court was not erroneous. It was one governing the order of proof and within the discretion of the court.[5] Alaska is not governed by statute on this point of evidence as is the case in some states where prima facie proof of the existence of a partnership is required before evidence of the declaration or act of a partner may be given.[6] Actually, in the situation mentioned, the rule would not seem to be applicable. Baxter and Nelson were not contesting the claim that they were members of the partnership. As to them, the partnership was admitted. Appellant did not contest the allegation that Baxter and Nelson were partners. His

5. Swanson v. Siem, 124 Cal.App. 519, 12 P.2d 1053, 1056 (1932).

6. See Ore.Rev.Stat. § 41.900(5); Calif. Code Civ.Proc. § 1870(5).

claim was that he was not a member of the same partnership. Under these circumstances, Baxter's representation to appellee that appellant was also a member of the partnership was nothing more than some evidence that such might be the case, to be weighed and considered by the trial judge along with any other evidence produced on that issue.[7]

The judgment is affirmed.

AREND, Justice (dissenting).

The Uniform Partnership Act[1] provides, in pertinent part, that:

"(1) A partnership is an association of two or more persons to carry on as co-owners a business for profit."[2]

"In determining whether a partnership exists, these rules shall apply:

"(1) Except as provided by Section 16 [§ 28–1–28 herein], persons who are not partners as to each other are not partners as to third persons."[3]

I note at the outset that the court does not hold that the findings made below support a conclusion (not reached below), with respect to Innes' liability, of partnership by estoppel under section 28–1–28, ACLA 1949.

The word "association" implies a voluntary act within the meaning of section 28–1–11. It is the intent to do the things which constitute a partnership that determines whether that relationship exists between persons.[4] The statute also requires co-ownership of a business.[5] It is not necessary that there be co-ownership of specific property[6] but there must be co-ownership of the profits in some certain proportions.[7]

The burden of establishing the partnership was upon the plaintiff;[8] and since there was no written agreement in evidence, the proof had to be clear and convincing.[9] The view that I take of the evidence[10] in this case makes any further discussion of the law of partnership unnecessary. The course of conduct followed by Innes, as shown by the evidence, did not provide the basis for anything more than sheer speculation on the part of the trial court. It can be argued that Innes' conduct was sufficient to support a reasonable inference that he had an interest in the profits of the mining venture. But his conduct was equally consistent with the undisputed evidence that Nelson was his friend. In such a situation judgment, as a matter of law, must go against the party upon whom rests the burden of sustaining one of these inferences as against the other,[11] and this is especially true when the burden is that of producing evidence which is clear and convincing.

7. See Wieder v. Lorenz, 164 Ore. 10, 99 P.2d 38 (1940).

1. Sections 28–1–1 through 28–1–65, ACLA 1949.

2. Section 28–1–11, ACLA 1949.

3. Section 28–1–12, ACLA 1949.

4. See Associated Piping and Engineering Co. v. Jones, 17 Cal.App.2d 107, 61 P. 2d 536 (1936), a case decided under the Uniform Partnership Act as enacted in California Corporations Code, §§ 15001–15045 (West 1955).

5. Schuster v. Largman, 308 Pa. 520, 529, 162 A. 305 (1932).

6. In re Kennedy's Estate, 321 Pa. 225, 183 A. 798 (1936).

7. Meehan v. Valentine, 145 U.S. 611, 12 S.Ct. 972, 36 L.Ed. 835 (1892); Westcott v. Gilman, 170 Cal. 562, 150 P. 777, 779 (1915).

8. Swanson v. Siem, 124 Cal.App. 519, 12 P.2d 1053 (1932); Powell v. Powell, 181 Ore. 675, 184 P.2d 373, 381 (1947).

9. Sullivan v. Schellinger, 170 Cal.App.2d 111, 338 P.2d 462 (1959).

10. I do not view the evidence as including the extra-judicial statements made by Baxter to the effect that Innes was a partner. Such evidence is inadmissible in the absence of other evidence sufficient to make out a prima facie case of partnership with respect to Innes. See 4 Wigmore, Evidence § 1078, at 123–25 (3d ed. 1940).

11. See Pennsylvania R. R. Co. v. Chamberlain, 288 U.S. 333, 339, 53 S.Ct. 391, 77 L.Ed. 819, 823 (1933); United States v. United States Gypsum Co., 67 F.Supp. 397, 450 (D.D.C.1946), reversed on other grounds, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

**180**

I would set aside the trial court's findings, express and implied, and would reverse the judgment appealed from and order that a decree be entered for the defendant Innes.