Filed 10/19/23 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JASON ENGEL et al., | B324560 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22STCV06062) |
| v. | |
| RICHARD PECH, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Respondent. | |
| | NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 28, 2023, be modified as follows:

1. On page 21, line 4, immediately after the sentence ending with "Engel's malpractice claims were properly dismissed" add as footnote 4 the following footnote:

**4**     Although the focus of Engel's briefs was the potential malpractice claim, Engel's petition for rehearing argues that Engel still has viable claims for breach of contract and breach of fiduciary duty. He is wrong.  In the operative complaint, Engel alleges that Pech breached the retainer agreement and his fiduciary duty by (1) committing malpractice; and (2) charging fees that, due to his malpractice, were excessive.  As described above, however, any damages arising from malpractice belong to the LLP, not Engel, and Engel's payment of fees does not otherwise transfer ownership of the LLP's malpractice claim (or the damages it may have suffered) to Engel.  No amendment can cure these defects.

*     *     *

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

ASHMANN-GERST, Acting P. J.  CHAVEZ, J.  HOFFSTADT, J.

2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JASON ENGEL et al., | B324560 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22STCV06062) |
| v. | |
| RICHARD PECH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Parker Shaffie and David B. Parker for Plaintiffs and Appellants.

Richard Pech, in pro. per., for Defendant and Respondent.

\* \* \* \* \* \*

A limited liability partnership and one of its partners retained a lawyer but limited the scope of representation to having the lawyer represent the partnership in a specific, ongoing case. After the partnership lost the case, the *partner* sued the lawyer for malpractice. In an amended complaint, the *partnership* was added as a plaintiff. The partner's complaint was filed before the statute of limitations ran; the amendment was filed after. This case thus presents two questions: (1) Do the *partnership's* malpractice claims "relate back" to the timely filing of the *partner's* malpractice claims (such that the partnership may continue as a plaintiff); and (2) May the *partner* continue to press his timely claims for malpractice against the lawyer, when the lawyer's sole task was to represent *the partnership* in the ongoing case? We conclude that the answer to both questions is "no." An amendment adding a new plaintiff will not relate back to a prior complaint if the new plaintiff is "enforc[ing] an independent right" that imposes a "'wholly distinct and different legal obligation against the defendant'" (*Bartalo v. Superior Court* (1975) 51 Cal.App.3d 526, 533, italics omitted (*Bartalo*); *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243 (*Branick*)). Because the partnership's malpractice claims against the lawyer are distinct from—and in addition to—the partner's malpractice claim, the partnership's claims do not relate back and are untimely. And because the scope of the lawyer's representation was to represent solely *the partnership* in the ongoing case, only *the partnership* has potentially viable claims for malpractice; those claims belong to—and any damages were suffered by—the partnership. As a result, the partner has suffered no damages as a matter of law. Thus,

the trial court properly sustained a demurrer to the amended complaint as to both plaintiffs. We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

I.   **Facts**

   A.   *The plaintiffs*

   Jason Engel (Engel) is a forensic accountant. He is "the principal" of Engel & Engel, LLP (the LLP), a limited liability partnership.

   B.   *The prior litigation*

   In 2014, the LLP was retained by three investors who were in the midst of suing the people who solicited them to make that investment. The investors did not pay the full amount the LLP billed for accounting services.

   The LLP initiated an arbitration against one of the investors (John and Judith DeLong, or the DeLongs), which netted the LLP an award of $27,100.13 in unpaid fees, along with attorney fees and costs (the DeLong arbitration).

   On May 18, 2016, the LLP subsequently sued a second investor (Wells Fargo Equipment Finance, Inc.), its attorney, and the attorney's law firm (the Wells Fargo litigation). Following a bench trial in the fall of 2018, the trial court entered judgment against the LLP, finding that the current lawsuit was based on a factual theory inconsistent with the position the LLP had asserted in the DeLong arbitration, and hence was barred by the doctrine of judicial estoppel. We affirmed the judgment against the LLP, but modified the investors' cost award. (*Engel & Engel, LLP v. Shuck et al.* (Nov. 4, 2021, B297421, B300755) [nonpub. opn.].)

3

**C.** *The retention and termination of attorney Richard Pech*

On September 21, 2018—more than two years after the LLP initiated the Wells Fargo litigation but prior to trial—Engel and the LLP both signed an agreement retaining Richard Pech (Pech) "solely" "for legal representation" in the pending Wells Fargo "lawsuit." While Engel signed both as a "client" and as a "partner" on behalf of the LLP, only the LLP (but not Engel) was a party to the Wells Fargo litigation and Pech's "legal services" were explicitly "limited" to that "lawsuit." The retainer agreement also prohibited any "side" agreements and required any modifications to be in "writing."

On February 25, 2021—after Pech filed an opening brief in the LLP's appeal from the judgment in the Wells Fargo litigation—the LLP filed a substitution of counsel that terminated Pech's representation.

## II. Procedural Background

### A. *The original complaint*

On February 17, 2022, Engel—while representing himself—filed a complaint against Pech for (1) professional negligence, (2) breach of contract, and (3) breach of fiduciary duty. All of Engel's professional negligence claims stem from Pech's allegedly deficient representation during the Wells Fargo litigation; specifically, Engel alleges that Pech (1) "failed to conduct proper research, analysis and investigation" regarding a defense; (2) "failed to call" Wells Fargo's attorney as a hostile witness to elicit damaging testimony; (3) "refused to comply" with one of the trial court's procedural requests; (4) "declined" to "deliver" a closing argument at the bench trial; and (5) "repeatedly displayed a contemptuous attitude toward the trial

court throughout the three-day bench trial." The breach of contract and breach of fiduciary duty claims similarly arise solely out of the Wells Fargo litigation; specifically, Engel alleges that Pech's attempt to collect fees for his deficient representation amounted to breaches.

Significantly, and contrary to the judicial opinions and retainer agreement attached as exhibits, the original complaint repeatedly but misleadingly alleges that Engel (rather than the LLP) was the party who initiated (and prevailed in) the DeLong arbitration as well as the party who prosecuted the Wells Fargo litigation.

### B.    *The operative first amended complaint*

On April 21, 2022—one week after he retained counsel— Engel filed the first amended complaint. The amended complaint is identical to the original complaint, except that it (1) adds the LLP as a plaintiff, and (2) corrects the inaccuracies in the original complaint by noting that *the LLP* (not Engel) was the party who initiated (and prevailed in) the DeLong arbitration as well as the party who prosecuted the Wells Fargo litigation.

### C.    *The demurrer is sustained*

Pech demurred to the first amended complaint on the grounds that (1) the *LLP's claims* are barred by the one-year statute of limitations applicable to malpractice claims; and (2) *Engel's claims* are barred because only the LLP, as Pech's sole client in the Wells Fargo litigation, has standing to sue for malpractice arising out of that litigation.[1] Engel and the LLP

---

1    Pech also filed a motion to strike and a request for judicial notice in support of that motion. Engel and the LLP opposed the request, but the trial court never ruled on the motion or request. They are not at issue on appeal.

5

(collectively, plaintiffs) opposed the demurrer, responding that the LLP's claims related back to the filing of Engel's claims and that Engel had standing to sue for malpractice. After Pech filed a reply and the trial court held a hearing, the court sustained the demurrer without leave to amend.

### D. *Motion for reconsideration*

After the trial court issued its judgment of dismissal, Engel filed a motion for reconsideration along with a proposed second amended complaint. In the motion, Engel argued that *he* had standing to sue Pech because (1) he had an "oral agreement" with Pech in which Pech agreed he was litigating for the LLP "for the benefit of" Engel, and (2) Engel had an "implied attorney-client relationship" with Pech that Pech would "protect[]" *Engel's* "interest in a successful recovery in the" Wells Fargo litigation. In the second amended complaint, plaintiffs added new allegations that Engel has an independent interest in the Wells Fargo litigation because (1) Engel, as "the principal and owner" of the LLP, "made all relevant decisions" regarding the Wells Fargo litigation; (2) Engel was the "sole beneficiary of any recovery" from the litigation; and (3) Engel was financing that litigation. After further briefing, the trial court denied the motion as untimely and without merit because the proffered second amended complaint did not "present any new allegations which could support the claim that . . . Engel was a client of Pech."

### E. *Appeal*

Plaintiffs filed this timely appeal.[2]

---

[2] Although plaintiffs' notice of appeal indicates that they appeal from both the dismissal order following the demurrer ruling *and* the ruling denying Engel's motion for reconsideration, they raise no separate argument in their briefs regarding the

6

Plaintiffs argue that the trial court erred in sustaining Pech's demurrer to their first amended complaint without leave to amend.

In assessing whether the trial court erred in this ruling, we ask two questions: "(1) Was the demurrer properly sustained; and (2) Was leave to amend properly denied?" (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1134 (*Shaeffer*).) In answering the first question, "we ask whether the operative complaint '"states facts sufficient to constitute a cause of action."'" (*California Dept. of Tax & Fee Administration v. Superior Court* (2020) 48 Cal.App.5th 922, 929 (*Tax & Fee Administration*); *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; Code Civ. Proc., § 430.10, subd. (e).) In undertaking that inquiry, "we accept as true all ""'material facts properly pleaded'""" in the operative complaint (*Tax & Fee Administration*, at p. 929; *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209-210) as well as facts appearing in the exhibits attached to it, giving ""'precedence'"" to the facts in the exhibits if they ""'contradict the allegations'"" (*Gray v. Dignity Health* (2021) 70 Cal.App.5th 225, 236, fn. 10; *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 767). In answering the second question, we ask ""'whether ""there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment.'""" (*Shaeffer*, at p. 1134.) We review the trial court's ruling regarding the first question de novo (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517; *People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777), and

reconsideration ruling and have accordingly abandoned their appeal from that ruling.

7

review its ruling regarding the second for an abuse of discretion (*Branick*, *supra*, 39 Cal.4th at p. 242).

Because a demurrer is properly sustained if a claim is "'necessarily[] barred'" by the applicable statute of limitations (*Geneva Towers Ltd. Partnership v. City and County of San Francisco* (2003) 29 Cal.4th 769, 781) or if a plaintiff is unable to establish an element of his claim as a matter of law (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 826, partially superseded by statute on other grounds as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547), the first step of assessing whether the demurrer in this case was properly sustained boils down to two questions: (1) Are the *LLP's* claims time-barred, which turns on whether the untimely filing of the LLP's claims relates back to the timely filing of Engel's claims; and (2) Are any of *Engel's* timely filed, malpractice-related claims viable?

## I.     Are the LLP's Claims Time-Barred?

A claim for legal malpractice (that is, a claim "whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services") has a one-year statute of limitations—whether it sounds in tort or contract. (Code Civ. Proc., § 340.6, subd. (a); *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1236-1237.) That limitations period begins to run when the attorney-client relationship ends, which happens when the attorney is "formally substituted out as counsel" or ""complet[es] the tasks for which [he was] retained."" (*Michaels v. Greenberg Traurig, LLP* (2021) 62 Cal.App.5th 512, 536; *Nguyen v. Ford* (2020) 49 Cal.App.5th 1, 13.) Because the LLP formally substituted Pech out as an attorney on February 25, 2021, the LLP's claims that were asserted for the first time in the first amended complaint are untimely because that amended

8

complaint was not filed until April 21, 2022—nearly two months *after* the one-year limitations period expired.

Thus, whether the LLP's malpractice-related claims were properly dismissed as untimely depends entirely on whether those claims "relate back" to *Engel's* claims asserted in the timely filed complaint.

As a general rule, subsequent amendments to a pleading will "relate back" to an earlier, timely filed pleading if they "(1) rest on the *same general set of facts*, (2) involve the *same injury*, and (3) refer to the *same instrumentality*, as the original [pleading]." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408-409; *Branick*, *supra*, 39 Cal.4th at p. 244.) Subsequent amendments that might relate back encompass amendments adding new causes of action between previously named parties (*San Diego Gas & Electric Co. v. Superior Court* (2007) 146 Cal.App.4th 1545, 1549-1550 (*San Diego Gas*)), adding new defendants (*ibid.*; *Barnes v. Wilson* (1974) 40 Cal.App.3d 199, 201-202), and, as is pertinent here, adding new plaintiffs (*Hutcheson v. Superior Court* (2022) 74 Cal.App.5th 932, 940 (*Hutcheson*) ["Relation back may apply to amendments that substitute a plaintiff"]; *American Western Banker v. Price Waterhouse* (1993) 12 Cal.App.4th 39, 49 [same]).

However, when it comes to adding a new plaintiff, courts have refined the general rule: A new plaintiff's claims relate back to claims asserted in a previously and timely filed complaint if the new plaintiff is seeking to enforce the same right as a previously named plaintiff (because, in that case, the amendment relies on the same general set of facts, involves the same injury, and refers to the same instrumentality of the defendant's conduct). (*Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 16-21

9

(*Klopstock*) [amendment to a derivative action in a corporation's name that substitutes a new plaintiff relates back because the relief "sought on behalf of the corporation [entails] . . . exactly the same liability" as previously alleged]; *Pasadena Hospital Assn., Ltd. v. Superior Court* (1988) 204 Cal.App.3d 1031, 1034-1037 (*Pasadena Hospital*) [amendment adding the prior plaintiff's professional corporation as a new plaintiff to a defamation lawsuit against a defendant who defamed the plaintiff relates back because "the resulting harms to [the plaintiff] and [his professional] corporation"—because damage was to their reputation, which was inseparable between the two—"do not appear to be distinct"]; *Bank of America v. Superior Court* (1973) 35 Cal.App.3d 555, 556-557 [amendment correcting an error in one word of the new plaintiff's three-word corporate name in a check forgery claim relates back because the claim is the same and because the check with the plaintiff's correct name was attached to the original complaint].)  This is why amendments that do no more than swap in a new plaintiff for an existing cause of action—when the new plaintiff is the real party in interest and the original plaintiff was not—typically relate back.  (*Cox v. San Joaquin Light & Power Corp.* (1917) 33 Cal.App. 522, 523-524 [amendment swapping in decedent's personal representative as plaintiff instead of decedent's heir relates back]; *California Gasoline Retailers v. Regal Petroleum Corp.* (1958) 50 Cal.2d 844, 850-851 [amendment swapping in individual as plaintiff instead of business association relates back]; *California Air Resources Bd. v. Hart* (1993) 21 Cal.App.4th 289, 301 (*Hart*) [amendment swapping in State of California as plaintiff instead of state agency relates back]; *Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1000, 1005 [amendment swapping in

10

bankruptcy trustee as plaintiff relates back]; see generally *Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670, 1678 [amended complaint "'by the right party'" relates back when it "'restates the identical cause of action'"].)

Conversely, a new plaintiff's claims do *not* relate back if the new plaintiff is seeking to "enforce a[] right" "independent" of the right asserted by the previously named plaintiff(s). (*Bartalo*, *supra*, 51 Cal.App.3d at p. 533, italics omitted; *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1264, 1278 (*Quiroz*).) This occurs when (1) the new plaintiff's claims rest on a "wholly different legal liability or obligation" (that is, a "distinct" "cause of action") "from that originally [alleged]" (*Klopstock*, *supra*, 17 Cal.2d at p. 20 [claim does not relate back "where the effect of such amendment is to state 'another and distinct cause of action'"]; *Branick*, *supra*, 39 Cal.4th at pp. 243-244; *Pasadena Hospital*, *supra*, 204 Cal.App.3d at p. 1035); (2) the new plaintiff's claims entail a distinct injury (*Quiroz*, at p. 1279); or (3) the new plaintiff's claims "'impose greater liability upon the defendant'" than the original plaintiff's claims (*Quiroz*, at p. 1278; *Bartalo*, at p. 533; *Estrada v. Royalty Carpet Mills, Inc.* (2022) 76 Cal.App.5th 685, 715, review granted June 22, 2022, S274340). (See *Quiroz*, at pp. 1278-1279 [amendment adding spouse as a plaintiff in her capacity as representative for the decedent in a survivor action does not relate back to prior complaint naming spouse as a wrongful death plaintiff because the two claims involve "different injur[ies]"]; *Dominguez v. City of Alhambra* (1981) 118 Cal.App.3d 237, 243 [same]; *Bartalo*, at p. 533 [amendment adding injured person's spouse as a plaintiff to assert a loss of consortium claim does not relate back to complaint alleging personal injury to person because the two

11

claims involve distinct injuries]; *Shelton v. Superior Court* (1976) 56 Cal.App.3d 66, 74 [same].)

At bottom, this refined, plaintiff-focused test is aimed at assessing whether adding the new plaintiff merely corrects a "'misnomer in the description of the [plaintiff]'" or instead "interject[s] a new party into the litigation for the first time under the guise of a misnomer." (*Hart*, *supra*, 21 Cal.App.4th at pp. 300-301; *Stephens v. Berry* (1967) 249 Cal.App.2d 474, 478.) This distinction seeks to harmonize competing policies. On the one hand, public policy favors liberal amendment of pleadings in order to effectuate the resolution of lawsuits on their merits if the party being sued has timely notice of its potential liability. (*Branick*, *supra*, 39 Cal.4th at p. 243; *Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 277 (*Pointe San Diego*) [noting "'strong policy in this state that cases should be decided on their merits'"]; *Pointe San Diego*, at p. 277 ["'The policy behind statutes of limitations . . . to put defendants on notice of the need to defend against a claim . . . is satisfied when recovery under an amended complaint is sought on the same basic set of facts as the original pleading'"].) On the other hand, public policy favors finality and repose once a limitations period for a particular potential liability has passed. (*Bartalo*, *supra*, 51 Cal.App.3d at p. 534 ["Once the statute of limitation has passed as to other possible plaintiffs, a defendant is entitled to dismiss them from his considerations"].)

Applying this law, we conclude that the malpractice claims brought *by the LLP* do not relate back to the timely filing of the malpractice claims brought *by Engel* because Pech's "legal liability or obligation" to the LLP is "different" and "distinct" from

12

his "legal liability or obligation" to Engel. To begin, the retainer agreement that is the sole basis for any malpractice liability in this case explicitly identifies two "clients"—the LLP *and* Engel as an individual. That is because Engel signed the agreement both as a representative for the LLP and also in his *individual capacity* as a "client." Thus, there are two potential sets of malpractice claims—one owned by the LLP, and another owned by Engel.[3] (*Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 529 [liability for malpractice "normally" runs "to the client with whom the attorney stands in privity of contract"]; *Stine v. Dell'Osso* (2014) 230 Cal.App.4th 834, 840 [same].) (Whether any such claim by Engel is unviable as a matter of law is a separate question we confront in section II of the Discussion.) What is more, the LLP is "an entity distinct" from Engel himself

[3] We accordingly disagree with the trial court's finding— implicit in its dismissal of Engel's claims without elaborating on the basis—that Engel lacked standing to pursue his otherwise timely filed malpractice claims. As a "client" under the retainer agreement, Engel, as an individual, stands in privity of contract and, as discussed in the text above, has standing to sue for malpractice. We consequently reject Pech's argument that we may sidestep examination of the relation-back question because Engel—as the originally named plaintiff—never had standing both (1) because Engel *did* have standing, and (2) because an original plaintiff's lack of standing is not, in any event, a bar to adding a new plaintiff if the test for relation back is otherwise satisfied. (*River's Side at Washington Square Homeowners Assn. v. Superior Court* (2023) 88 Cal.App.5th 1209, 1239 ["'[A] named plaintiff's lack of standing at the beginning of an action is not necessarily fatal to continuation of the action'"]; *San Diego Gas, supra*, 146 Cal.App.4th at p. 1550 [same]; *Branick, supra*, 39 Cal.4th at pp. 243, 244 [rejecting argument that lack of standing is fatal to amendment].)

(Corp. Code, § 16201 ["[a limited liability] partnership is an entity distinct from its partners"]), and this distinctness includes the LLP's right and ability to sue in its own name (*id.*, § 16307, subd. (a); Code Civ. Proc., § 369.5, subd. (a)). As a result, Pech owes *each* Engel *and* the LLP a separate "legal liability or obligation" to perform competently the services for which he was retained, and each therefore owns its own potential malpractice claims against Pech. Engel himself seems to recognize this: The amended complaint did not *replace* Engel as an individual with the LLP, as it would if the LLP were merely stepping into Engel's shoes as a plaintiff; instead, the complaint *added* the LLP as a second plaintiff, because Engel and the LLP stand in different shoes. Because, and as explained more fully below, the scope of Pech's retention—and hence his duties—was "limited" solely to the pending Wells Fargo litigation involving the LLP, and because any damages resulting from deficient representation in that litigation accordingly were suffered only by the LLP (and none by Engel, who was not a party to that litigation), adding the LLP as a plaintiff also risks "impos[ing] greater liability upon" Pech. Plaintiffs asserted at oral argument that Pech's liability to the LLP was "coextensive" with (and, ostensibly, no different from) his liability to Engel as an individual, such that a trier of fact's sole duty would be to "allocate" damages between the two. We reject this argument because it incorrectly conflates Pech's liability to the LLP for malpractice with his liability to Engel as an individual; as noted above, that liability is distinct.

Our conclusion is consistent with the analysis—and the conclusion—set forth in *Diliberti v. Stage Call Corp.* (1992) 4 Cal.App.4th 1468 (*Diliberti*). There, two sisters were involved in a car crash; one was injured, the other was not. The uninjured

14

sister filed a timely lawsuit against the driver at fault. That sister later sought to amend her complaint to add the injured sister as a new plaintiff, but did so after the statute of limitations had run. The trial and appellate courts did not allow the amendment, reasoning that each sister had a distinct claim for damages, such that adding the new sister interjected a new plaintiff (with different and greater liability to the defendant) into the lawsuit. This case before us is analogous: Both Engel and the LLP have distinct potential claims for malpractice, so it is equally inappropriate to add the injured party (the LLP) to the lawsuit after the limitations period has run merely because the uninjured party (Engel) had previously filed a timely claim.

Plaintiffs' chief response is that Engel's original complaint put Pech on notice of his liability for malpractice arising out of the Wells Fargo litigation. Because "the most important consideration" into "whether an amended complaint rests on the same general set of facts" for purposes of the relation-back doctrine "is whether the original pleading gave the defendant adequate notice of the claim" (*Hutcheson*, *supra*, 74 Cal.App.5th at p. 940; *Pointe San Diego*, *supra*, 195 Cal.App.4th at p. 280), plaintiffs continue, the LLP's claims also arising out of Pech's malpractice in the Wells Fargo litigation should relate back. We reject this argument because it conflates notice of potential liability *to Engel* with notice of potential liability *to the LLP*. The retainer agreement attached to the original complaint explicitly named *both* Engel and the LLP as clients, yet the original complaint (misleadingly) reported that *Engel* was the named party in the Wells Fargo litigation and *Engel* had suffered injury as a result. It nowhere referred to the LLP as a party-litigant in the Wells Fargo litigation who was itself seeking to vindicate *its*

15

*own* rights as a client under the agreement. The original complaint effectively said, "There are two possible plaintiffs, but only one of them is suing for malpractice." The separateness of Pech's potential liability for malpractice *to Engel* and Pech's potential liability for malpractice *to the LLP* means that the two liabilities do *not* rest on the same general set of facts; notice of one is not synonymous with notice of the other.

At bottom, plaintiffs seem to be suggesting that Pech *should have known* that Engel's original complaint was wrong to name Engel as the plaintiff rather than the LLP. *Diliberti* implicitly rejected this "should have known" argument when it refused to let the injured sister join the lawsuit previously filed by the uninjured sister. We see no reason to part ways with *Diliberti* on this issue, particularly when it is well established that "the failure to comply with a statute of limitations cannot be excused on the ground of lack of prejudice" (which, here, would be the lack of prejudice to the party being sued possibly knowing of an error in naming the actually injured plaintiff). (*San Diego Gas*, *supra*, 146 Cal.App.4th at p. 1553; *State Farm Fire & Casualty Co. v. Superior Court* (1989) 210 Cal.App.3d 604, 612.)

Because plaintiffs do not attempt to articulate any way to amend the complaint to avoid the time bar (and because we independently perceive no such way), we conclude that the trial court properly sustained the demurer to the LLP's claims without leave to amend.

## II. Can Engel State Viable Claims?

### A. *Does the first amended complaint state viable malpractice-related claims by Engel?*

Although, as noted above, Engel—as a party in privity with Pech under the retainer agreement—has standing to sue for

16

malpractice, we must next ask:  Are Engel's malpractice claims otherwise defective as a matter of law?

We conclude they are.  Liability for legal malpractice requires proof by the client-plaintiff that (1) the attorney owed a duty to the client "'to use such skill, prudence and diligence as members of the profession commonly possess'"; (2) the attorney breached that duty; (3) the breach proximately caused the client's injury; and (4) the client was damaged.  (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 536.)  Damages in a malpractice lawsuit include (1) the amount the client paid the attorney (*Simke, Chodos, Silberfeld & Anteau, Inc. v. Athans* (2011) 195 Cal.App.4th 1275, 1288); and (2) the difference between what the client would have obtained had the lawyer's representation been competent and what the client actually obtained (*Merenda v. Superior Court* (1992) 3 Cal.App.4th 1, 12, disapproved on other grounds by *Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037, 1053).

The allegations in the operative complaint as well as the attached exhibits show, as a matter of law, that the *only* entity to have suffered damages attributable to Pech's alleged malpractice is *the LLP*, not Engel.  Although both Engel and the LLP signed the retainer agreement as clients, that agreement explicitly "limit[s]" Pech's duties to "legal representation" in the pending Wells Fargo litigation.  But only the LLP was a party to that litigation; Engel never was.  Because the malpractice alleged in the operative complaint is also explicitly limited to deficiencies in Pech's representation during the Wells Fargo litigation, the only entity that could have suffered damages as a result of that malpractice was the LLP, not Engel.  What is more, because the LLP's potentially viable claims for malpractice are a type of

17

property (*Potter v. Alliance United Ins. Co.* (2019) 37 Cal.App.5th 894, 907; *Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949, 956), and because "[p]roperty acquired by a [limited liability] partnership is property of the partnership and not of the partners individually" (Corp. Code, § 16203; *Bartlome v. State Farm Fire & Casualty Co.* (1989) 208 Cal.App.3d 1235, 1240 (*Bartlome*) [although limited liability partnerships are a type of "'hybrid' organization that is viewed as an aggregation of individuals for some purposes, and as an [independent] entity for others," "a partnership is viewed as an [independent] entity . . . with respect to ownership of property"]), the LLP's malpractice claims belong solely to the LLP, and *not* to Engel. (Accord, *Wallner v. Parry Professional Bldg., Ltd.* (1994) 22 Cal.App.4th 1446, 1449 ["When a partnership has a claim, the real party in interest is the partnership and not an individual member of the partnership"].) Consequently, Engel cannot establish he was damaged by Pech's malpractice, such that *Engel's* malpractice claims fail as a matter of law.

Engel resists this conclusion with what boils down to three arguments.

First, Engel argues that he has a viable malpractice claim against Pech because he is an "intended beneficiary" of the retainer agreement between Pech and the LLP. Because Engel's arguably greater status as a *signatory* to the retainer agreement does not compensate for the fact that the damages attributable to any malpractice belong to the LLP and not him, his lesser status as an intended beneficiary—even if we assume him to have that status—is also not enough. Indeed, were we to accept Engel's argument, we would effectively permit an individual partner to step into a limited liability partnership's shoes by the simple

18

expedient of labeling himself an "intended beneficiary"; in so doing, we would effectively eliminate the otherwise clear—and statutorily mandated—line between property owned by a limited liability partnership and property owned by the partnership's individual partners, as well as effectively authorize a transfer of the malpractice claims from the LLP to Engel in violation of the general rule prohibiting such transfers (*Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 504 [such claims are generally not assignable]; cf. *White Mountains Reinsurance Co. of America v. Borton Petrini, LLP* (2013) 221 Cal.App.4th 890, 909 [such assignment may be permissible as part of a sale of *all* assets]).

Second, Engel argues that the LLP's malpractice claims effectively belong to him because *he* was the one speaking with Pech on the LLP's behalf and paying its legal bills. We are unpersuaded. An LLP—as an incorporeal entity—must communicate with its lawyer through *someone*, and the fact of that communication does not itself make the communicator a concurrent owner of the LLP's malpractice claims (see *Zenith Ins. Co. v. O'Connor* (2007) 148 Cal.App.4th 998, 1009 (*Zenith*)), let alone transfer any resulting malpractice claim belonging to the LLP to the communicator. For much the same reason, the payment of attorney fees also does not transfer ownership of the malpractice claims. (*Ibid.*) Consistent with this analysis, claims for malpractice suffered by a partnership must be brought *by the partnership*, and not by the individual partners. (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 60 [so holding]; *Tinseltown Video, Inc. v. Transportation Ins. Co.* (1998) 61 Cal.App.4th 184, 199-200 [same]; *Bartlome*, *supra*, 208 Cal.App.3d at pp. 1239-1240 [same].)

Third, Engel argues that he should be able to sue individually because he—as the self-proclaimed "principal" of the LLP—will individually benefit if the LLP prevails in proving malpractice. Although counsel for a limited liability partnership can sometimes, depending on a variety of factors, be deemed to "represent" the individual partners (*Wortham & Van Liew v. Superior Court* (1987) 188 Cal.App.3d 927, 932-933; *Johnson v. Superior Court* (1995) 38 Cal.App.4th 463, 475-476; *Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1732-1733), this potential for an attorney-client relationship running between the partnership's counsel and the individual partner does *not* mean that those individual partners own the partnership's property—including its potential claims for recovery—simply because those partners may eventually benefit financially from how the partnership uses that property. The law is to the contrary. (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1062 [claims owned by receiver for a partnership belong solely to the receiver, not individual partners]; *Sausser v. Barrack* (1954) 123 Cal.App.2d Supp. 948, 950 [money owed to a partnership did not "belong" to partners "individually"]; *Swanson v. Siem* (1932) 124 Cal.App. 519, 528 [same].) Indeed, "to allow a [partner] to sue on his own behalf" (as Engel suggests) "would run the risk of double recovery—once to the [partner] and once to the [partnership]." (*Vinci v. Waste Management, Inc.* (1995) 36 Cal.App.4th 1811, 1815 [applying this principal to shareholders of a corporation].) And because partnerships by definition have at least two partners (see Corp. Code 16101, subd. (a)(9) [defining "partnership" to mean two or more partners]), the risk here is of *at least* triple recovery.

20

For these reasons, we conclude as a matter of law that Engel has suffered no damage as a result of Pech's alleged malpractice to the LLP during the Wells Fargo litigation, and that Engel's malpractice claims were properly dismissed.

**B.      *Can Engel amend the complaint to state a claim on his own behalf for malpractice?***

Given that all damages for any malpractice claims were suffered by and belong to *the LLP*, there is no "reasonable possibility" that *Engel* can amend the complaint to state a viable malpractice claim.

Engel offers two sets of arguments to the contrary.

First, Engel argued in his motion for reconsideration that he can amend the complaint to state that (1) he had an "oral agreement" with Pech that Pech "would pursue the [Wells Fargo litigation] for the benefit of . . . Engel based on . . . Engel's commitment to pay the legal fees," and (2) he had an "implied attorney-client relationship whereby . . . Engel had an actual and reasonable expectation that Pech would protect[] his interest in a successful recovery in the underlying [litigation]." These proposed amendments would not cure the defects in Engel's pleading. To begin, these allegations are little more than an end run around the legal principles stated above—namely, they allege that Engel's payment of the attorney fees and expectation of a payout somehow transfer ownership of the LLP's malpractice claims to him. As explained above, they do not. What is more, both of these proposed amendments are flatly foreclosed by the terms of the retainer agreement, which prohibit all "side" agreements not memorialized in writing—whether "oral" or "implied." Because "implied" agreements are grounded in the parties' mutual intent (*Zenith*, *supra*, 148 Cal.App.4th at p.

21

1010), no implied agreement could be consistent with the parties' *express* mutual intent in the retainer agreement to not have unwritten, "implied" agreements.

Second, Engel alleged in the proposed second amended complaint that he had an interest in the Wells Fargo litigation prosecuted by the LLP because he "made all relevant decisions" for the LLP regarding that lawsuit, he was the "sole beneficiary of any recovery," and he was "financing" that lawsuit personally. These allegations do not cure the defects in the complaint for the same reasons the arguments he makes in his reconsideration motion fail:  They do nothing more than allege legal conclusions contrary to the governing law (and to which we owe no deference) (*Berry v. State of California* (1992) 2 Cal.App.4th 688, 691 ["conclusions of law are not binding on a court reviewing a demurrer"]; *Today's IV, Inc. v. Los Angeles County Metropolitan Transportation Authority* (2022) 83 Cal.App.5th 1137, 1169 ["conclusion[s] of law" are "to be disregarded"]), and they seek to blur the otherwise clear distinction between claims owned by an LLP and claims owned by individual partners.

## DISPOSITION

We affirm the judgment.  Pech is entitled to his costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>**.


_____, J.

HOFFSTADT


We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ